**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALYSSA CLAPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| THE LINCOLN NATIONAL LIFE | ) | |
| INSURANCE COMPANY, | ) | JURY DEMAND ENDORSED HEREON |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT**

Plaintiff, ALYSSA CLAPSON, by and through her counsel, Drost, Gilbert, Andrew & Apicella, LLC, for her Complaint against Defendant, THE LINCOLN NATIONAL LIFE INSURANCE COMPANY (hereinafter "LINCOLN NATIONAL"), states as follows:

**Nature of the Action**

1.      This cause of action arises from LINCOLN NATIONAL's failure to pay life insurance benefits and its bad faith efforts to evade liability under its policy of insurance.

**Subject Matter Jurisdiction**

2.      Plaintiff, ALYSSA CLAPSON, is, and at all times herein relevant was, domiciled in the state of Illinois.

3.      Defendant, LINCOLN NATIONAL is, and at all times herein relevant was, a corporation organized under the laws of the state of Indiana that maintains its principal place of business in Greensboro, North Carolina.

4.      This Court has jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) based upon diversity of citizenship between the parties and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

**Personal Jurisdiction**

5.      This Court has personal jurisdiction over Defendant, pursuant to 735 ILCS 5/2-209, because Defendant is subject to general personal jurisdiction in the State of Illinois, and because this action arises from Defendant's transaction of business in Illinois and statutory violations that occurred in Illinois.

**Venue**

6.      Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and/or omissions giving rise to the claims occurred in this District.

**COUNT I**
**BREACH OF INSURANCE CONTRACT**

7.      Plaintiff was married to Paul Clapson on November 11, 2007, and the couple subsequently divorced on September 14, 2016.

8.      Defendant, LINCOLN NATIONAL, is a foreign corporation that at all times relevant to this action was authorized to write life insurance policies within the state of Illinois.

9.      On or about October 28, 2015, Paul Clapson submitted an application for life insurance coverage to LINCOLN NATIONAL. (Application attached as Ex. A)

10.      Concurrent with the application on  October 28, 2015, Paul Clapson authorized LINCOLN NATIONAL to obtain all of his medical records from "any licensed physician, medical practitioner, hospital, clinic, Pharmacy Benefit Manager or any other medically related facility, insurance support organizations, insurance company, Medical Information Bureau

2

(MIB), or other organization, institution or person that has any records or information" related to his health for the stated purpose of "to determine eligibility for insurance."

     11.    On or about November 20, 2015, LINCOLN NATIONAL dispatched a paramedical examiner to Paul Clapson's residence for the purpose of conducting a medical examination of Paul Clapson to determine if he was eligible for life insurance coverage.

     12.    As a part of that examination, LINCOLN NATIONAL's medical examiner completed a Medical Supplement (Part II of the Application) form based upon Paul Clapson's responses to her inquiries. (Medical Supplement attached as Ex. B).

     13.    Additionally, as a part of the examination, LINCOLN NATIONAL's medical examiner measured Paul Clapson's height; weight; took and recorded three separate blood pressure readings; measured and recorded his pulse at rest, after exercise and then three minutes later; as well as collected urine and blood samples which were sent to labs for analysis.

     14.    All three of his blood pressure readings were well within the range of normal blood pressure readings.

     15.    Three months after Paul Clapson first applied, LINCOLN NATIONAL finally determined he was eligible for life insurance and in consideration of premiums paid to it, Defendant LINCOLN NATIONAL, issued and delivered to Paul Clapson its policy of life insurance, Policy Number T400029300. (hereinafter "the Policy" and attached as Ex. C) on or about January 26, 2016.

     16.    Paul Clapson's then-wife, ALYSSA CLAPSON was properly named as the beneficiary under the Policy.

     17.    On or about September 20, 2016, ownership of the policy was transferred from Paul Clapson to ALYSSA CLAPSON.

18.     The Policy provides benefits to ALYSSA CLAPSON in the amount of Seven Hundred Fifty Thousand Dollars ($750,000.00) in the event of Paul Clapson's death within the first twenty policy years. (Ex. C at p. 11).

19.     On or about June 22, 2017, the Policy was in full force and effect.

20.     On or about June 22, 2017, Paul Clapson was pronounced dead by the office of the Cook County Medical Examiner.

21.     At the time of his death, Paul Clapson was thirty-four (34) years old.  Prior to his death, Paul Clapson enjoyed a multi-year career as a professional athlete playing soccer in Europe.  He left surviving him his ex-wife and their two minor children.

22.     On or about July 21, 2017, ALYSSA CLAPSON made a claim for the life insurance policy benefits.

23.     That same day, LINCOLN NATIONAL requested that ALYSSA CLAPSON execute an Affidavit of Next of Kin, which she could not as his ex-wife truthfully do and she accordingly communicated her inability to truthfully do so to LINCOLN NATIONAL.

24.     On or about November 1, 2017, LINCOLN NATIONAL denied the claim for life insurance benefits asserting that Paul Clapson made material misrepresentations in response to Question Nos. 1 and 2A of the Application he signed on October 28, 2015. (Denial Letter attached as Ex. D).

25.      An examination of the policy application reveals that this assertion by LINCOLN NATIONAL in its denial letter is absurd.  Question 1 seeks Mr. Clapson's name, which he accurately provided.  Question 2 does not even include any subparts, so there is no 2A.  Question 2 required Mr. Clapson to check a box indicating whether he was male or female, to which he accurately responded. (Ex. A at p. 1).

4

26.     The denial letter goes on to apparently assert that Mr. Clapson failed to disclose on October 28, 2015, that he had previously been diagnosed with and treated for asthma, anxiety, alcohol abuse and hypertension, citing medical records for treatment from January 25, 2015 through December 2, 2015. (Ex. D).

27.     An examination of Medical Supplement (Part II of the Application) form attached to the policy reveals, however, that LINCOLN NATIONAL's assertion that Mr. Clapson had and/or failed to disclose certain medical conditions is blatantly inaccurate. (Ex. B)

28.     For example, Mr. Clapson answered yes to Question 5(e) which asked whether he had been diagnosed or treated for asthma and yes to Question 5(g) which asked about anxiety, depression, stress or any other emotional disorder.

29.     He also admitted to using alcohol in response to Question 7.

30.     Despite multiple requests, LINCOLN NATIONAL has refused to provide Plaintiff with copies of the medical records it purportedly relied upon in its denial of this claim suggesting that ALYSSA CLAPSON obtain them directly from the medical providers.

31.     LINCOLN NATIONAL made this suggestion knowing full-well that ALYSSA CLAPSON would not be able to obtain copies of the medical records directly from the providers.

32.     735 ILCS 5/8-2001.5 limits the ability of medical providers in Illinois to release a deceased patient's records to only the deceased person's surviving spouse; or if there is no surviving spouse, any one or more of the following: (i) an adult son or daughter of the deceased, (ii) a parent of the deceased, or (iii) an adult brother or sister of the deceased.

33.     Neither ALYSSA CLAPSON, as his ex-wife nor their minor children are authorized to obtain the medical records directly from the providers.

34.     With the authorization of her former mother-in-law, ALYSSA CLAPSON was able to obtain some of the medical records LINCOLN NATIONAL purportedly relied upon.

35.     An examination of those records reveals that LINCOLN NATIONAL has blatantly and falsely misrepresented the contents of those records.

36.     For example, in the denial letter LINCOLN NATIONAL references certain records for treatment that LINCOLN NATIONAL misrepresents Mr. Clapson received from Alexian Brothers Behavioral Health on January 25, 2015.  No such treatment occurred on that date, however.  The treatment actually occurred a year later, and importantly after Mr. Clapson's medical supplement was completed, on January 25, 2016.

37.     In its denial letter, LINCOLN NATIONAL also claims to rely upon North Shore Medical Group records for treatment in September and November of 2015.

38.     In response to Plaintiff's counsel's request to North Shore Medical Group for Mr. Clapson's medical records for the time period of January 1, 2015 through June 22, 2017, North Shore Medical Group indicated that there was "no treatment at this facility for the dates of service requested."

39.     Moreover, LINCOLN NATIONAL has not and cannot identify any licensed medical professional that diagnosed or treated Paul Clapson for hypertension at any point in time prior to the completion of the medical supplement.

40.     Plaintiff has fully complied with and fulfilled her obligations under said contract for insurance.

41.     At all relevant times Defendant, LINCOLN NATIONAL:

a.      held a position of trust with Plaintiff; and

b.      had a fiduciary relationship with Plaintiff; and

    c.      had a special relationship with Plaintiff; and

    d.      had a duty not to violate any of the aforementioned positions and relationships.

42.     After the claim was made, it became the duty of Defendant, LINCOLN NATIONAL, to pay to Plaintiff the value of the policy.

43.     Though requested to do so, Defendant, LINCOLN NATIONAL has failed and refused, and still fails and refuses, to pay to Plaintiff the sum of owed money due under the terms of the policy or any part of it.

44.     Defendant breached its contract with Plaintiff by not paying to Plaintiff the value of the policy.

45.     At all times herein relevant, there existed in full force and effect a statute commonly known as the Illinois Insurance Code, 215 ILCS 5/1, *et seq*.

46.     At all times herein relevant, Section 155 of the Illinois Insurance Code, 215 ILCS 5/155, was in full force and effect, which provides Plaintiff with a remedy for unreasonable and vexatious delay in settling the claim.

47.     At all times, the Defendant was subject to the Illinois Insurance Code 215 ILCS 5/154.6, which prohibits the following Improper Claims Practices:

    a.  Knowingly misrepresenting to claimant relevant facts or policy provisions relating to coverages at issue;

    b.  Not attempting in good faith to effectuate prompt, fair and equitable settlement of a claim submitted in which liability has become reasonably clear;

    c.  Compelling its policyholder to institute suits to recover amounts due under its policy by offering substantially less than the amounts ultimately recovered in suits brought by them; and,

    d.  Refusing to pay a claim without conducting a reasonable investigation based on all available information.

48.     Notwithstanding, Defendant, LINCOLN NATIONAL has denied this claim without proper or sufficient grounds and without a good faith basis to do so.

49.     Even more egregiously, LINCOLN NATIONAL attempted to induce ALYSSA CLAPSON to abandon her claim by misrepresenting the contents of the medical supplement completed as a part of the policy application, misrepresenting the contents and dates of certain medical records for treatment Paul Clapson underwent and refusing to provide Plaintiff with a copy of those records.

50.     Additionally, LINCOLN NATIONAL misrepresented to Plaintiff that it was prohibited by HIPAA from redisclosing Mr. Clapson's medical records to her when HIPAA does not apply to it and misrepresented that the HIPAA compliant authorization signed by Paul Clapson prohibited redisclosure to her and/or her counsel when the form actually provided that "I [Paul Clapson] understand that there is a possibility of re-disclosure of any information disclosed pursuant to this authorization and that information, once disclosed, may no longer be protected by federal rules governing privacy and confidentiality."

51.     Defendant caused Plaintiff to file this lawsuit and incur legal expenses, fees and delay.

52.     As a result of Defendant's unreasonable and vexatious delay in settling Plaintiff's claim, Plaintiff has suffered irreparable harm and financial burdens.

53.     The actions of Defendant, LINCOLN NATIONAL, in this case constitute vexatious and unreasonable delay in failing to tender the policy benefits to Plaintiff

WHEREFORE, Plaintiff prays for an order by this Honorable Court entering judgment in favor of Plaintiff, ALYSSA CLAPSON, and against Defendant, THE LINCOLN NATIONAL LIFE INSURANCE COMPANY in the amount of:

a.   $750,000.00;

b.   interest at a rate of 10% per annum pursuant to 215 ILCS 5/224(l) from the date of death;

c.   costs of suit;

d.   attorneys' fees accrued in prosecution of the claim;

e.   statutory remedies, including penalties of up to $60,000, as specified in 215 ILCS 5/155, and,

f.    any other relief this court deems fit and proper.

## COUNT II
## VIOLATIONS OF CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT IN THE ADJUSTMENT OF THE CLAIM

54.     Plaintiff repeats and realleges paragraphs 1-50 as if fully set forth herein.

55.     Throughout the course of the adjustment of the life insurance claim, LINCOLN NATIONAL, in violation of 815 ILCS 505/2, engaged in one or more of the following unfair or deceptive acts or practices:

a.   Concealed or suppressed facts by refusing Plaintiff's repeated requests to provide copies of the medical records that it purportedly relied upon as a basis for its rescission of the policy;

b.   Misrepresented to Plaintiff that it was prohibited by HIPAA from redisclosing Mr. Clapson's medical records when HIPAA does not apply to it and the HIPAA compliant authorization signed by Paul Clapson prohibited redisclosure to her and/or her counsel when the form actually provided that "I [Paul Clapson] understand that there is a possibility of re-disclosure of any information disclosed pursuant to this authorization and that information, once

9

disclosed, may no longer be protected by federal rules governing privacy and confidentiality.";

c.   Misrepresented the contents of Paul Clapson's Application for Insurance – Part I in its November 1, 2017 denial letter;

d.   Misrepresented the contents of Paul Clapson's Medical Supplement submitted as a part of his application for life insurance benefits in its November 1, 2017 denial letter;

e.   Misrepresented the contents of some of Paul Clapson's medical records in its November 1, 2017 denial letter;

f.   Misrepresented the dates of certain medical treatment in its November 1, 2017 denial letter; and,

g.   Rescinded the policy based upon false pretenses.

56.   The foregoing acts, omissions and/or misrepresentations were made by LINCOLN NATIONAL in an attempt to induce Plaintiff to abandon her legitimate claim under the policy.

57.   Plaintiff has been deprived of the use of the policy benefits at a particularly inopportune time and forced to incur legal fees and the costs of this suit as a proximate result of LINCOLN NATIONAL's deceptive practices.

WHEREFORE, Plaintiff prays for an order by this Honorable Court entering judgment in favor of Plaintiff, ALYSSA CLAPSON, and against Defendant, THE LINCOLN NATIONAL LIFE INSURANCE COMPANY in the amount of:

a.   $750,000.00;

b.   interest at a rate of 10% per annum pursuant to 215 ILCS 5/224(l) from the date of death;

10

c.  costs of suit;

d.  attorneys' fees accrued in prosecution of the claim;

e.  punitive damages; and,

f.   any other relief this court deems fit and proper.

Respectfully submitted,

By:     /s/Kenneth C. Apicella
        Kenneth C. Apicella
        KCA@dgaalaw.com
        Susan Mills-Martinez
        SMM@dgaalaw.com
        DROST, GILBERT, ANDREW & APICELLA, LLC
        4811 Emerson, Suite 110
        Palatine, IL 60067
        P: (847) 934-6000
        F: (847) 934-6040

JURY DEMAND

Plaintiff, ALYSSA CLAPSON, hereby demands a trial by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure, on all issues so triable.

/s/Kenneth C. Apicella
One of the Attorneys for Plaintiff